UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Brett Josephson, *et al.*, individually and on behalf of themselves and all others similarly situated, | |
| *Plaintiffs,* | No. 26 CV 220 |
| v. | Judge Lindsay C. Jenkins |
| Kalshi, Inc. *et al.*, | |
| *Defendants.* | |

MEMORANDUM OPINION AND ORDER

In January 2026, Plaintiffs,[1] a group of Illinois residents, filed this class action against Defendant Kalshi, Inc. and several of Kalshi's subsidiaries[2] seeking compensation under the Illinois Gambling Recovery Act for the company's alleged violations of the Illinois Sports Wagering Act and the Illinois Criminal Code. Plaintiffs also bring claims under the Illinois Consumer Fraud and Deceptive Business Trade Practices Act and the Illinois Uniform Deceptive Trade Practices Act, along with a claim for unjust enrichment.

This lawsuit is not the first of its kind. Plaintiffs all over the country have sued Kalshi on similar or identical grounds. See, *e.g.*, *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025); *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282 (D. Nev. Nov. 24, 2025). Indeed, four class actions bringing similar claims against Kalshi are currently consolidated and pending in the Southern District of New York. See *In re Kalshi Sports Prediction Market Litigation*, No. 25-cv-8585 (S.D.N.Y.). On that basis, Kalshi moves to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

For the reasons discussed, the motion is granted.

---

[1]    Named plaintiff are Brett Josephson, Luis Cuevas, Tyrone Stuckey, and Temuujin Shaariibuu.

[2]    Defendants include Kalshi, Inc., KalshiEX, LLC, Kalshi Klear LLC, Kalshi Klear, Inc., and Kalshi Trading, LLC.

## I.      Background[3]

Kalshi, Inc. is a Delaware corporation headquartered and operated in New York City. [Dkt. 1, ¶ 16.][4] Kalshi Inc. is the parent company of all other Kalshi entities, including each defendant in this case. [*Id.*, ¶ 17–22.]

According to Plaintiffs' complaint, Kalshi is "one of the world's most popular and lucrative online and app-based gambling platforms." [*Id.*, ¶ 1.] Using what it labels as a "prediction market," Kalshi allows users to purchase event contracts, which are "agreements, contracts, transactions, or swaps in excluded commodities that are based upon the occurrence, extent of an occurrence, or contingency," "other than a change in the price, rate, value, or levels of a commodity." [*Id.*, ¶ 36 (quoting 7 U.S.C. § 7a-2(c)(5)(C)(i)).] For each event contract, Kalshi poses a "yes" or "no" question regarding a future event, such as whether the San Franscisco 49ers or Indianapolis Colts will win a particular football game. [*Id.*, ¶¶ 38–39.] Kalshi profits through transaction fees and by acting as a counterpart to every bet. [*Id.*, ¶ 40.]

While Kalshi markets its "event contracts as peer-to-peer transactions in which users are trading against one another based on differing predictions of future events," Plaintiffs allege that, because "Kalshi's market maker consistently supplies liquidity on both sides of each event contract, consumers are not meaningfully betting against other participants but against the house itself." [*Id.*, ¶ 44.] Kalshi, the Plaintiffs continue, also uses several other methods to ensure that individual gamblers are unlikely to profit over time and falsely advertises its platform as a legal prediction market. [See, *e.g.*, *id.*, ¶ 50.]

Plaintiffs are residents and citizens of Illinois and domiciled in Cook County. [*Id.*, ¶¶ 12–15.] Each plaintiff began placing wagers through Kalshi after learning of the platform through various physical or online advertisements. [*Id.*, ¶¶ 78, 85, 91, 99.] And each plaintiff lost money on their wagers. [*Id.*, ¶¶ 81, 89, 95, 102.]

## II.      Analysis

Kalshi asks the court to transfer this case to the Southern District of New York, where four similar class actions have been consolidated into a single complaint filed on April 7, 2026. See *In re Kalshi Sports Prediction Market Litigation*, No. 25-cv-8585 (S.D.N.Y.). The complaint in the New York Action includes a Nationwide Class made up of "all persons in the United States who spent money by wagering on Kalshi's mobile or web platforms" and Statewide Classes, including an Illinois Class made up

---

[3]      The following factual allegations are taken from Plaintiffs' complaint [dkt. 1] and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. See *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

[4]      Citations to docket filings generally refer to the electronic pagination supplied by CM/ECF, which may not be consistent with page numbers in the underlying documents.

of "all persons in Illinois who spend money by wagering on Kalshi's mobile or web platforms."

The New York Action, moreover, is based on largely the same underlying facts: that Kalshi operates an illegal, unlicensed sports gambling market which it falsely advertises as a legal "prediction market." The plaintiffs there bring claims that overlap with the ones Plaintiffs bring here (unjust enrichment and the Illinois Gambling Loss Recovery Statute), although the New York Action does not allege Illinois-specific consumer fraud claims.

Because the New York Action involves similar questions of fact and law, Kalshi asserts that litigating this suit in the Southern District of New York would serve both the convenience of the parties and witnesses and the interests of justice. "For the convenience of parties and witnesses, in the interest of justice," a court may transfer a case to any district where it could have been brought in the first instance. 28 U.S.C. § 1404(a).[5] Convenience and the "interest of justice" are separate elements. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Whether to grant a motion to transfer is a discretionary decision, requiring the court to exercise "a large degree of subtlety and latitude" in balancing the factors for and against transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

### A.    Convenience

Five factors inform the court's convenience analysis: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties." *Castanon v. Illinois Cent. R.R. Co.*, 2025 WL 2076733, at *2 (N.D. Ill. July 23, 2025) (quotations and citation omitted); see *Research Automation, Inc.*, 626 F.3d at 978.

The first factor—plaintiffs' choice of forum—counsels against transfer but only slightly. Especially when, as here, the plaintiffs bring suit in their home forum, the plaintiffs' choice is given substantial weight. See *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). A plaintiff's choice has less pull, however, when another forum has a stronger relationship to the dispute. See *Jasper v. Danone N. Am. Pub. Benefit Corp.*, 2023 WL 4492354, at *2 (N.D. Ill. July 12, 2023). That's the case here.

The conduct Plaintiffs complain about (Kalshi's business model and marketing) took place at Kalshi's headquarters in New York City by Kalshi employees who live in or near New York City. See *Preston v. Am. Honda Motor Co., Inc.*, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017) (explaining that district where defendant, Honda, made business decisions and manufactured vehicles had stronger

---

[5]    In addition, venue must be proper in both the transferor and transferee district, and jurisdiction must be proper in the transferee district. See *Rosen v. Spirit Airlines*, 152 F.Supp.3d 1055, 1059 (N.D. Ill. 2015). Venue and jurisdiction are proper in the Southern District of New York.

connection to consumer fraud and warranty dispute than the district where plaintiff resided and purchased his Honda). For this reason, four class actions (now consolidated) are currently being litigated in the Southern District of New York. Illinois's connection to the dispute, in contrast, is more attenuated. Yes, Plaintiffs live in Illinois and used the Kalshi platform here. But the Kalshi platform is also used worldwide, making Illinois's relationship to the suit less compelling.

The second factor—the situs of material events—tips in favor of transfer. Plaintiffs' claims are largely based on Kalshi's alleged deceptive business practices, and it's well established that "where a claim revolves around large-scale misrepresentations or statements to consumers, the situs of material events is where the defendant made the underlying business decisions." *Preston*, 2017 WL 5001447, at *3; *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) ("The conduct which is the focus of this suit is decisions by Defendants to market and sell Applebee's WeightWatchers Menu items with allegedly misrepresented nutritional information, not the purchases by Plaintiffs."); see also *Bryant v. QuiBids LLC*, 2012 WL 394154, at *6 (N.D. Ill. Feb. 3, 2012) (transferring case against online gambling company to the district where "all of the development and management of the website took place"); *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *3 (N.D. Ill. July 14, 2021) ("[T]he material events inquiry focuses on the location of actions creating the injury, not the location of the injury itself."). And while Plaintiffs reside in and used Kalshi in Illinois, Plaintiffs do not allege that the Kalshi platform was only available in Illinois or that Kalshi made misrepresentations specific to Illinois residents. *Preston*, 2017 WL 5001447, at *3 (plaintiff's choice of forum in Illinois afforded less weight because plaintiff did not allege that defendant's conduct was particularized to Illinois).

The third factor—access to sources of proof—has little weight, and the parties do not make compelling arguments either way. See *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) ("The 'ready availability of photocopying and the relative ease with which documents may be selectively shipped around the country' renders this consideration insignificant." (quoting *Shakir Dev. & Const., LLC v. Flaherty & Collins Const., Inc.*, 2011 WL 2470887, *2 (N.D. Ill. June 21, 2011)).

The fourth factor—convenience of the witnesses—is neutral or slightly in favor of transfer. While convenience of the witnesses is often deemed one of the most important factors, neither party has convinced the court that any non-party witness will be seriously inconvenienced based on whether the case proceeds in New York City or Chicago. Plaintiffs assert that "potential witnesses" are located in Illinois. Specifically, they say that Illinois witnesses will need to testify about "whether Kalshi applied for licensure under the Illinois Sports Wagering Act, whether it was denied licensure, and whether it was investigated by the Illinois Gaming Board for violations of the Act." This argument is a non-starter. For one, Kalshi concedes that it has no

4

license from the Illinois Gaming Board. For another, Plaintiffs do not explain the relevance of whether Kalshi was investigated by the Illinois Gaming Board.

Kalshi, for its part, points out that several of its employees, all located near New York City, are likely to be called as witnesses. But the convenience of witnesses employed by a party usually receives less consideration. See *Caterpillar, Inc. v. ESCO Corp.*, 909 F. Supp. 2d 1026, 1031 (C.D. Ill. 2012) ("The Court also notes, however, that the convenience of witnesses who are employed by the parties, such as Plaintiff's and Raptor's engineers, is not an important consideration, because their participation in the suit will be obtained as part of their employment, rather than by their own willingness or the Court's subpoena power, and their compensation and expenses will be paid by their employers."). Still, it's important to consider that these employee witnesses would be especially inconvenienced should they have to travel between Chicago and New York City for two separate trials dealing with largely the same claims.

The fifth factor—convenience of the parties—is neutral. This factor focuses on the parties' "respective residences and abilities to bear the expense of trial in a particular forum." *Von Holdt v. Husky Inj. Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). But transfers based purely on the inconvenience of travel, the Seventh Circuit has explained, should be "fewer than in the past" given advances in technology, like "high-quality video-conferencing." *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013).

The court recognizes that Kalshi, as a large corporation, is likely in a better position to bear the costs of traveling from New York to Chicago for court proceedings when necessary. See *Preston*, 2017 WL 5001447, at *5. At the same time, though, the nature of Plaintiffs' claims means a significant number of Kalshi employees, who are located in New York, may be called to testify. Not only does that increase Kalshi's expenses but, considering that the same employees would likely be testifying in the New York Action, it duplicates the time and resources spent on court proceedings involving those employees. See *Orthoflex, Inc. v. Thermotek, Inc.*, 2010 WL 5069700, at *4 (N.D. Ill. Dec. 3, 2010) ("One consideration in the convenience of the parties' analysis is the cost that parties must incur in making their employees available for deposition and trial.").

That said, it's not the court's practice to shift one party's inconveniences onto the other party. See *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). Because both parties here are subject to comparable inconveniences, the tie goes to the Plaintiffs and works against transfer. *Id.*

With these factors in mind, Kalshi has not persuaded the court that litigating this case in the Southern District of New York would be "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

### B.    Interests of Justice

While the convenience factors alone are insufficient reasons for transfer, the interests of justice compel the court's transfer of this case to the Southern District of New York. In considering the interests of justice, the focus is not on the merits of Plaintiffs' underlying claims "but rather the public's interest in conserving scarce judicial resources by 'efficient administration of the court system.'" *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015) (quoting *Rsch. Automation, Inc.*, 626 F.3d at 978). Factors to consider include: "(1) trying related litigation together; (2) having the trial before a judge who is familiar with the applicable law; and (3) the desire of communities to adjudicate matters that affect them directly." *Id.*

The New York Action is front and center in this analysis. Kalshi argues that allowing this case to go forward in the Northern District of Illinois while an almost identical class action proceeds in the Southern District of New York would prove inefficient by largely duplicating the judicial process. The court agrees.

Start with an important observation: "The apparent trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district." *Rosen*, 152 F. Supp. 3d at 1063; see, *e.g.*, *Jaramillo, Inc.*, 664 F. Supp. 2d at 916 ("It would go against the public's interest in judicial economy to allow two different courts to hear nearly identical motions."); *Jasper v*, 2023 WL 4492354, at *5 ("English's action in the Southern District of New York—although recently dismissed—is so similar to Jasper's, this Court's duplicative effort to become familiar with the controversy would be an obvious waste of resources.").

Applying this here makes good sense. On just a cursory review of Plaintiffs' complaint and the consolidated complaint in the New York Action, several common questions of fact and law emerge. To name just a few:

- Do Kalshi's "prediction markets" fall under Illinois's definition of "gambling?" [*Compare* dkt. 1, ¶ 3, *with In re Kalshi Sports Prediction Market Litigation*, Consolidated Compl., ¶ 260, Dkt. 47, No. 25-cv-8585 (S.D.N.Y.)]
- Is Kalshi a "winner" under 720 ILCS 5/28-8? [*Compare* dkt. 1, ¶ 119, *with In re Kalshi Sports Prediction Market Litigation*, Consolidated Compl., ¶ 263, Dkt. 47, No. 25-cv-8585 (S.D.N.Y.)]
- Whether Kalshi misled consumers into believing they were betting against other consumers? [*Compare* dkt. 1, ¶ 44, *with In re Kalshi Sports Prediction Market Litigation*, Consolidated Compl., ¶ 131, Dkt. 47, No. 25-cv-8585 (S.D.N.Y.)]
- Whether the Commodity Exchange Act preempts Illinois law purporting to regulate Kalshi? [Dkt. 8 at 13; see *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667, 675–86 (D. Md. 2025) (addressing Kalshi's argument that the CEA

6

preempts Maryland state gambling law as applied to Kalshi's sports-event contracts).

If this action and the New York Action were to proceed separately, both this court and the Southern District of New York would expend resources investigating the same facts, resolving similar discovery disputes, familiarizing themselves with the same relevant legal principles, and potentially reaching contradictory conclusions. This duplication of judicial efforts, moreover, would be compounded if both actions reach appeal where two different appellate courts would have to consider the same issues again.

Plaintiffs offer several reasons against transfer, but none are persuasive. First, they say that the New York Action is in "legal conflict" with their case. Specifically, Plaintiffs assert that the New York Action "implicitly acknowledges that the [Kalshi] user agreements apply to their disputes," making it so Plaintiffs would be unable to argue against the enforceability of the arbitration agreements. Not only does this argument seem to delve into the merits of the claims, but Plaintiffs' concerns are unfounded at this stage—a decision to transfer is not a decision to consolidate. Plaintiffs will be free to raise their "legal conflict" argument in the Southern District of New York should the issue arise.

Plaintiffs also argue that transfer would either "violate" their rights or "duplicate efforts" because the New York Action is "already in the throes of briefing." Plaintiffs are mistaken. The plaintiffs in the New York Action filed a consolidated complaint on April 7, 2026, and no dispositive motions have since been filed.

Finally, Plaintiffs point out that the New York Action does not bring claims under the Illinois Consumer Fraud and Deceptive Business Trade Practices Act and the Illinois Uniform Deceptive Trade Practices Act. This is true. But the New York Action does raise consumer fraud claims under several other similar state laws and, in doing so, relies on the same underlying facts that support Plaintiffs' Illinois consumer fraud claims. So while the form of the claims in the New York Action may slightly differ from those here, the substance of the claims is the same. See *Jaramillo*, 664 F. Supp. 2d at 916 ("[T]hough the claims are based on different underlying law, they are substantially similar because they are based on the same underlying facts."); *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *11 (N.D. Ill. Mar. 18, 2013) ("While the claims are based on different underlying law, they are substantially similar because they have the same underlying facts.").

In short, the parties and claims in this case and the New York Action are so similar in law and fact that it would be a waste of scarce judicial resources to have two different courts familiarize themselves with the controversy and risk the potential for contradictory opinions. The Southern District of New York also has a

less congested docket, allowing for quicker resolution of the parties' dispute.[6] So a transfer makes sense for this reason, too.

### III.  Conclusion

Kalshi's motion is granted. The case is transferred to the Southern District of New York.

Enter: 26-cv-220
Date:  April 21, 2026

_____
Lindsay C. Jenkins

---

[6]  See Federal Court Management Statistics, March 2025, U.S. Courts (Mar. 31, 2025) https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-march-2025 (showing 465 versus 714 weighted filings per judge, a 5.9-month versus 7.6-month time to disposition, and a 33.6-month versus 58.6-month time to trial).